# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01637-RBJ

ENTREPRENEUR MEDIA, INC.,

    Plaintiff,

v.

WILLIAM SPENCER, an individual,
FREE INTERNET MEDIA, INC., a Colorado corporation dba MEMEBRIDGE, and
DOES 1-10,

    Defendants.

---

**ORDER REGARDING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS AND JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS**

---

Upon consideration of Plaintiff Entrepreneur Media, Inc.'s ("EMI") Application for Entry of Default Judgment against defendants Free Internet Media, Inc., dba Memebridge ("Memebridge") and William Spencer ("Spencer") (collectively, "Defendants") [ECF No. 19] and all supporting documents and pleadings of record, and good cause appearing therein, the Court hereby **ORDERS** that the application is **GRANTED**, enters this **JUDGMENT** and a **PERMANENT INJUNCTION** against Defendants, and **FINDS** as follows:

**I.    DEFAULT JUDGMENT AGAINST DEFENDANTS IS APPROPRIATE**

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment and, if necessary to effectuate judgment, conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Entering default judgment is within the discretion of the Court and requires two considerations.

*See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). The "Court must first consider whether it has jurisdiction over the subject matter and the defendants." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014). "The Court then must consider whether the well-pleaded factual allegations in the complaint support a judgment on the claims against the defaulting defendants." *Big O Tires, LLC v. C&S Tires, Inc.*, 2017 U.S. Dist. LEXIS 79939, at *6-7 (D. Colo. May 24, 2017). A plaintiff establishes trademark infringement or unfair competition by demonstrating that it "(1) owns a protectable trademark; [and] (2) that Defendant[s] used [a] [disputed] trademark" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Grady v. Nelson*, 2014 U.S. Dist. LEXIS 172759, at *17 (D. Colo. Dec. 15, 2014). As further discussed in Sections 2 and 3 below and briefly summarized here, EMI has satisfied both requirements for the entry of default judgment against Defendants.

*First*, the Court has subject-matter jurisdiction over EMI's claims for trademark infringement, unfair competition, and false designation of origin because they are federal claims brought under the Lanham Act. *See* 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(2); 15 U.S.C. §§ 1114, 1125. The Court also has personal jurisdiction over Defendants because they are residents of Colorado and have conducted substantial business within Colorado under the ENTREPRENEUR SUPPORT mark, thereby committing tortious acts within the State. *See CrossFit, Inc.*, 69 F. Supp. 3d at 1094 (while Plaintiff "bears the burden of establishing personal jurisdiction," where, as here, "the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing").

*Second*, the well-pleaded factual allegations in the Complaint support the entry of

US-DOCS\97003982.1

judgment against the Defendants. EMI has complied with the procedural requirements for default judgment, including securing the entry of default against Defendants. As discussed below, Defendants have infringed EMI's strong, famous, and distinctive marks and this misconduct shows no signs of abating. Because the "well-pleaded factual allegations of [the] complaint are deemed true," there is no possibility of a dispute concerning the material facts. *See Big O Tires, LLC*, 2017 U.S. Dist. LEXIS 79939, at \*7. Accordingly, the entry of default judgment against Defendants is appropriate.

## II. THE COURT HAS JURISDICTION OVER DEFENDANTS

"Colorado's long arm statute provides that a defendant is subject to personal jurisdiction where he or she engages in the 'transaction of any business within this state' or commits a 'tortious act within this state.'" *CrossFit, Inc.*, 69 F. Supp. 3d at 1094 (citing Colo. Rev. Stat. § 13-1-124). This Court thus has personal jurisdiction over Defendants because they are residents of Colorado and have conducted substantial business within Colorado under the ENTREPRENEUR SUPPORT mark, thereby committing tortious acts within the State. Moreover, this Court has personal jurisdiction over Defendants because, at all relevant times, they were residents of and domiciled in the State of Colorado. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that Defendant's domicile in the District is a "paradigm" basis for establishing personal jurisdiction). Asserting claims against Defendants in their home court in this case thus comports with "traditional notions of fair play and substantial justice." *Big O Tires, LLC*, 2017 U.S. Dist. LEXIS 79939, at \*14-15 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Accordingly, the Court hereby **FINDS** that it has specific jurisdiction over Defendants and may properly enter a default judgment against Defendants.

## III. DEFENDANTS HAVE INFRINGED EMI'S TRADEMARK RIGHTS

### A. EMI'S TRADEMARK RIGHTS

EMI owns the following valid U.S. trademark registrations (collectively, "EMI Marks"):

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities | 1,453,968 Aug. 25, 1987 |
| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers and; web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises<br>41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance | 2,502,032 Oct. 30, 2001 |
| ENTREPRENEUR | 38: Streaming of video and digital material on the Internet | 4,260,948 Dec. 18, 2012 |
| ENTREPRENEUR | 9: downloadable computer software and software for mobile devices for the reproduction, display and distribution of digitized content. | 4,345,424 June 4, 2013 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |

US-DOCS\97003982.1

| | | |
|---|---|---|
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | 3,470,064 July 22, 2008 |
| | 35: On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | |
| E P Entrepreneur Press | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running, and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | |
| ENTREPRENEUR'S STARTUPS | 9: Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities | 3,204,899 Feb. 6, 2007 |
| ENTREPRENEUR 360 | 16: Annual featured issue of magazine featuring the achievements of successful non-franchise and privately-owned businesses and publications related thereto, providing information and incentive to others | 5,052,999 October 4, 2016 |

| | | |
|---|---|---|
| | to pursue excellence in business pursuits by presenting awards on an annual basis, and promoting award recipients and providing recognition by the way of awards to demonstrate excellence in the field of business.<br><br>35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information to customers in the field of starting and operating non-franchise and privately-owned businesses by means of a global computer network and other computer online service providers; advertising services, namely, providing advertising space in a magazine featuring news and information concerning the field of non-franchise and privately-owned businesses; providing statistics, ratings, and rankings and other information capable of being updated on a continuing basis through an interactive database and about businesses which are not franchises and are privately-owned.<br><br>41: Recognizing the achievements of successful non-franchise and privately-owned businesses and providing incentive to others to pursue excellence in business pursuits by presenting a wards on an annual basis and promoting award recipients; providing recognition by the way of awards to demonstrate excellence in the field of business; arranging and conducting educational conferences; educational services, namely, developing, arranging, and conducting educational conferences and programs and providing courses of instruction in the field of business administration and management | |

EMI's registration numbers 1,453,968; 2,263,883; and 2,502,032 for ENTREPRENEUR® and 3,204,899 for ENTREPRENEUR'S STARTUPS® are incontestable.

The federal registrations for the EMI Marks constitute prima facie evidence that the marks are valid and owned by EMI. 15 U.S.C. § 1115(a). The incontestable registrations for the EMI Marks noted above constitute "conclusive evidence" of the validity of those registered marks, EMI's ownership of those marks, and EMI's "exclusive right to use the mark[s] in commerce." 15 U.S.C. § 1115(b).

Further, other courts have already recognized the validity and strength of the EMI Marks,

including the ENTREPRENEUR® Mark, and this Court concurs with those decisions.

For example, the U.S. District Court for the Central District of California held that:

(1) "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® mark] as a strong mark in the industry;" (2) the ENTREPRENEUR® mark "is a strong distinctive mark, deserving of significant protection;" and (3) the ENTREPRENEUR® mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, at *9-10, 13 (C.D. Cal. June 23, 2004). The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212 (9th Cir. 2004).

Similarly, the U.S. District Court for the District of Connecticut recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819, Dkt. # 19 (D. Conn. Aug. 19, 2015).

Both a Magistrate Judge and District Court judge in the Eastern District of Virginia found the ENTREPRENEUR® mark to be distinctive, and the U.S. District Court for the District of Maryland recognized the EMI Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, Dkt. # 11-00409, 2011 U.S. Dist. Lexis 139817, at *3-5 (E.D. Va. Dec. 6, 2011); *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al*, 958 F. Supp. 2d 588, 594-596 (D. Md. 2013).

EMI has also developed extensive common law rights in the EMI Marks through consistent, wide-spread use of the marks throughout the United States. EMI and its predecessor

companies have used the ENTREPRENEUR® mark for over forty years to publish magazines and books that provide editorial content and other information, as well as offer products and services related or of interest to businesses, business owners, and prospective business owners. EMI's *ENTREPRENEUR*® magazine has a current paid circulation, including both subscriptions and newsstand sales, of more than 590,000 in the United States, it is sold and distributed in over 100 foreign countries, and it regularly features articles with high-profile entrepreneurs. EMI has also published over 200 books (and multiple e-books) under the ENTREPRENEUR® and ENTREPRENEUR PRESS® marks and it has conducted numerous seminars, workshops, and other educational events, many of which are sponsored by large, well known corporations such as American Airlines, Canon USA, and The Lincoln Motor Company.

EMI also owns and operates several websites, such as *entrepreneur.com*, to promote its goods and services. The *entrepreneur.com* website has averaged over 18 million unique visitors and over 46 million page views per month. EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with various companies, such as the NFL Players Association, General Motors, Princeton Review, CNBC, and Business Insider.

As a result of the above activities and success, the EMI Marks, and in particular the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known, famous, and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection.

B.  DEFENDANTS INFRINGE EMI'S TRADEMARK RIGHTS

Defendants have used the ENTREPRENEUR SUPPORT mark in commerce to offer similar goods and services to the same class of consumers targeted by EMI, namely various sized

businesses, business owners, and prospective business owners. Defendants have marketed their goods and services through their website at *entrepreneur-support.com.*

Defendants' ENTREPRENEUR SUPPORT mark is likely to cause consumer confusion with the EMI Marks based on an examination of the relevant *Sally Beauty* factors, which are (1) the degree of similarity between the marks; (2) the strength or weakness of the plaintiff's mark; (3) the similarity of products and manner of marketing; (4) the intent of the alleged infringer in using the mark; and (5) the degree of care likely to be exercised by purchasers. *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).[1]

*First*, the ENTREPRENEUR® and ENTREPRENEUR SUPPORT marks are closely similar as they both share the leading and dominant "ENTREPRENEUR" term and the descriptive and non-source identifying "support" term does little to distinguish the marks. *See, e.g.*, *Dun-Rite Home Improvements, Inc. v. Dun-Rite, LLC*, 2016 U.S. Dist. LEXIS 40329, at *11-12 (D. Colo. Feb. 2, 2016) (recognizing the high degree of similarity between "Dun-Rite" and "Dun-Rite Home Improvements").

*Second*, the EMI Marks, as discussed above, are strong and distinctive marks, especially the famous ENTREPRENEUR® mark.

*Third*, EMI and Defendants offer closely related – if not identical – goods and services (*e.g.*, business advice, information, and resources) to the same class of consumers (*e.g.*, various sized businesses, business owners, and prospective business owners). EMI and Defendants also offer these goods through the same or similar marketing channels, such as through their

---

[1] Given the posture of this litigation, EMI did not provide any evidence of actual confusion. However, evidence of actual confusion is not dispositive, nor is any other single *Sally Beauty* factor. Therefore, the scales balancing the likelihood of confusion still tip in EMI's favor. *See Sally Beauty Co., Inc.*, 304 F.3d at 972.

9

respective websites.

*Fourth*, as alleged in the Complaint (which is accepted as true), Defendants have intentionally, knowingly, deliberately, and willfully used the ENTREPRENEUR SUPPORT mark to violate EMI's trademark rights and trade off EMI's goodwill and reputation, and have refused to cease this infringement.

*Fifth*, consumers are unlikely to exercise a substantial degree of care when reading Defendants' free online articles and otherwise utilizing Defendants' free services and products under the ENTREPRENEUR SUPPORT mark. This low degree of care increases the likelihood of confusion. *See Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir. 1998).

As all of the relevant *Sally Beauty* factors weigh in favor of finding a likelihood of confusion, the Court hereby **FINDS** that: (1) Defendants have infringed EMI's federally registered trademarks in violation of 15. U.S.C. § 1114; and (2) Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

## IV. PERMANENT INJUNCTION

In consideration of the above and after weighing all appropriate equitable factors applicable to this case, the Court finds that permanent injunctive relief is appropriate because EMI has suffered irreparable injury that cannot be adequately compensated by monetary damages. *See Patagonia, Inc. v. Hunt*, 2016 U.S. Dist. LEXIS 166713, at *8 (D. Colo. Nov. 2, 2016). Indeed, Defendants' lack of response to this lawsuit indicates that Defendants' infringing activities might continue, and therefore Defendants' wrongful conduct must be ceased. *See Dun-Rite.*, 2016 U.S. Dist. LEXIS 40329, at *18. As Defendants are operating their business in direct violation of the Lanham Act, the balance of hardships tilts in EMI's favor, and the public's interest in preventing consumer confusion would be best served by a permanent injunction

10

against such unlawful behavior.

Therefore, the Court hereby enters the following **PERMANENT INJUNCTION**:

A.  Defendants, and their principals, officers, directors, members, partners, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, are hereby **PERMANENTLY ENJOINED** and shall immediately:

  i.  cease all use and never use the ENTREPRENEUR SUPPORT mark, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

  ii.  never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendants is in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

  iii.  never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, authorized, or sponsored by EMI;

  iv.  cease all use of the *entrepreneur-support.com* domain name and any similar domain names, and never register any domain names that contain

any of the EMI Marks, or any domain names confusingly similar to any of the EMI Marks;

v. cease all use of the Social Media Accounts (*htttps://twitter.com/FounderSupport; https://www.facebook.com/pg/Entrepreneur-Support-279776088706581/about*) and any similar accounts or social media websites, and never register any social media account that contains the ENTREPRENEUR SUPPORT mark, any of the EMI Marks, or any other social media account confusingly similar to any of the EMI Marks;

vi. never unfairly compete with EMI in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the EMI Marks;

vii. never apply for or seek to register any mark that is likely to cause confusion with any of the EMI Marks;

viii. transfer to EMI all domain names, including but not limited to *entrepreneur-support.com*, in Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to or contain any of the EMI Marks; and

ix. transfer to EMI all of Defendants' Social Media Accounts, including all such accounts in Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to or contain any of the EMI Marks.

B. To give practical effect to the Permanent Injunction, the Registrar for any domain name subject to this Order shall, within fourteen (14) days of receipt of this Order, transfer those subject domain names to EMI if Defendants have not already done so.

C. To give practical effect to the Permanent Injunction, the social networking service or entity (e.g., Twitter, Facebook) related to any of the social media accounts subject to this Order shall, within fourteen (14) days of receipt of the Order, transfer those subject accounts to EMI if Defendants have not already done so.

D. Defendants shall file with the Court and serve upon EMI's counsel, within thirty (30) days after service of this Order, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Permanent Injunction.

## V.  EMI IS AWARDED ITS COSTS AND REASONABLE ATTORNEYS' FEES

The Court hereby deems EMI to be the prevailing party in this action under 15 U.S.C. § 1117(a) and 54(d)(1) of the Federal Rules of Civil Procedure. Further, the Court deems this case to be exceptional under 15 U.S.C. § 1117(a) because of Defendants' intentional and willful misconduct, as well as their defiance and protraction of the judicial process by not responding or appearing in this matter. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). Accordingly, EMI is hereby provisionally awarded its costs and reasonable attorneys' fees, and is directed to submit a request for costs and attorneys' fees in accordance with the procedures and deadlines set forth in Federal Rule of Civil Procedure 54(d) and Local Rule 54.

## VI.  DISMISSAL OF DOE DEFENDANTS

Pursuant to EMI's voluntary dismissal, it is further **ORDERED** that Doe Defendants 1-10 are hereby dismissed without prejudice.

13
US-DOCS\97003982.1

On this 15th day of December, 2017, **IT IS SO ORDERED**.

*[signature]*

Hon. R. Brooke Jackson
United States District Judge